The next matter, number 162359, Philip Eil v. US Drug Enforcement Administration. May it please the Court, Janie Lilly for the Drug Enforcement Administration would like to reserve two minutes for rebuttal. Yes. Your Honors, this case presents the question of whether the District Court correctly balanced the significant privacy interests at stake in some of the most sensitive personal information that the government holds against the de minimis public interest in those records. Don't you have a predecessor argument? I thought you were arguing the District Court used the wrong standard entirely, that it used a standard about access to judicial records, which is not the standard used by the FOIA statute, and that if the appropriate FOIA standard had been used, the outcome would be contrary to what the District Court found. Precisely, Your Honor, that the District Court's balance was incorrect, in large part because it used a standard unknown to FOIA, a standard from, cited expressly, precedents concerning the common law rights of access. Okay, so the District Judge thought that he was taking care of the privacy interests with his little redaction order. What was wrong? Why is that not satisfactory? Well, as we explained in our brief, that even the redactions order did not sufficiently protect the privacy interests, because of the limited universe of individuals whose records were introduced at trial, and the public nature of the criminal trial transcript, which is available, that those individuals can be identified through information in the trial transcript. The dates they visited Dr. Volkman, the prescriptions they received, that there's so much information about them in the trial transcript that they could be readily identified, even if their names and Social Security numbers are redacted, or the trial exhibit numbers are redacted. And so that the redactions insufficiently protect the privacy interests, the District Judge recognized that they wouldn't protect it, and where the privacy interests are so significant here, and the luminous medical histories about third parties who were witnesses or victims to Dr. Volkman's crimes, that these limited redactions simply cannot protect privacy. The government is not due. I understand there are two categories of documents. Yes, Your Honor. One is the medical records, and the other is sort of the death autopsy set of records. Yes, Your Honor. Just as a practical matter, describe the documents that fall into both of those categories. Yes, Your Honor. The medical records, of course, will vary depending on the individual person, but in the main they contain significant, voluminous medical histories of patients of Dr. Volkman's. Much of those documents precede even their visits with Dr. Volkman. So they would be medical records produced by other medical providers, some going back to their childhood. The death-related records as described in our brief are a category of different types of documents, all of which describe the circumstances of death in some detail. Toxicology reports, autopsy reports, there are photographs of deceased bodies, and so those are the second category of records. With respect to both categories? Yes, Your Honor. Were all of the records that you just described entered into evidence at the trial? Were some of them entered, or were none of them entered? Your Honor, all of the records that are subject to plaintiff's FOIA request were entered into evidence at trial. As described in our brief, many of those documents were entered sort of en masse without description of the context. Okay. I want Judge Lynch to be able to follow up on the line of questioning that she began with, but before you sit down, I want you to tell us which way that cuts in this case. Well, as we set out in our brief, Your Honor, the fact that those documents may have been admitted at trial does not waive or diminish the privacy interests. Indeed, under this Court's precedents and those of the Supreme Court, those privacy interests remain significant where they were not publicly available or waived. Okay. So why didn't you ask for a sealing order? Your Honor, my understanding is that at the criminal trial, that there were certain limited redactions of that information introduced at trial, but as Your Honor points out, that there wasn't a sealing order at the criminal trial. Why not? If the government's so interested in protecting privacy, why didn't you ask for a sealing order? Your Honor, it may have been that we should have, but that doesn't affect this Court's analysis under the Freedom of Information Act, as this Court is aware its jurisdiction over this request is subject to the Freedom of Information Act. You responded to Judge Howard with some of them were mass, what, 50 documents at once? I don't understand quite what you were telling us. Well, the medical records, for instance, any single medical record would contain many, many pages of information. And so that document was introduced as an exhibit or a pair of exhibits in many cases. I'm sorry, was it an exhibit about a particular patient or was it an exhibit about a group of patients? My understanding is that the exhibits would be about a single individual, but in some medical records for a single individual might be more than one exhibit because they are so large. But when that information was introduced, it was introduced as a single medical record or a single exhibit, but the amount of information that was discussed, that was contained in that medical record that was actually discussed at trial and therefore is relevant to any public interest that plaintiff has asserted is very limited and is already available to you in a criminal trial transcript, which goes to our point that plaintiff hasn't established a significant public interest that would outweigh these privacy interests, but most importantly he hasn't shown that the voluminous public information, private information rather, about these patients would have any direct bearing, it would not yield any new information over and above the already voluminous information that he has about Dr. Volkman's conviction. Well, his argument is essentially, I think, that I want to do an expose of the DEA and to do that I need these documents to understand how the DEA operates. Your Honor, that's simply not enough under this Court's precedent to show that the private information about patients that preexisted their visits with Dr. Volkman would yield any new information. I thought you were actually making two arguments. One is privacy outweighs, but the other is that whether or not privacy is involved here, he has more than enough documents to describe how DEA operates without having these additional documents. Am I right? You're making both of those? He's making arguments that on the public interest side of the calculus he simply hasn't shown that this would reveal any new information, but also that that public interest is significantly outweighed by the privacy interest here. I see that my time has expired. Good morning, Your Honors. May it please the Court, Jessica Schachter Jewell on behalf of Philip Isle, the opponent in this matter. There are three questions that this Court needs to consider with respect to this case. First, are there privacy interests at play? Second, is there a significant public interest in the information requested? And third, does the significant public interest outweigh the privacy concerns? I'm sorry, you haven't dealt with her contention that the District Court simply used the wrong standard. Would you deal with that? Yes, Your Honor. My client contends that the District Court did not look at these records in a vacuum. They were trial exhibits that were entered by the federal government in a criminal case that sent a man to life for four consecutive life sentences. And that alters the standard? No, Your Honor, it does not. Our contention is that the judge did look to judicial records case law, but we do not believe that he erred in looking to those cases as a backdrop and then returning to the FOIA framework and applying the correct balancing acts. I don't understand that. When we deal with judicial records, we typically deal with common law, any rules that might be in place in constitutional law. Here we have a statute that tells us exactly how to, what do the judicial records balancing have to do with this? Again, Your Honor, I believe that the District Court did not look at these records in a vacuum. He considered the fact that the federal government chose to call through voluminous discovery and specifically choose these records to introduce them into a criminal trial. To try a case, not to expose the information to the public. Well, but then, Your Honor, I would suggest that by introducing them as unsealed records, the government did introduce them to the public. But that wasn't their purpose, is my point. That's correct. It wasn't their purpose except if the government did use the evidence contained in these records to fulfill the statute that the DEA is And so then ordinarily, the appropriate body would look at whether, would look at the judicial records law, case law, to decide whether to release it. But that's not what this case is. This is a case governed by a statute. Tell me why it's important or why it was necessary or why it was even correct to use the judicial records approach. I can't speak for the judge, Your Honor, but again, I believe that he Did you urge him to do so? I don't believe that I urged the District Court to apply the judicial records framework. You mean he came up with this on his own? We certainly argued that these records are important because they were introduced in a public criminal trial. But before the District Court in our papers, we argued that the FOIA framework should apply and that in balancing the private versus public interests, that the balancing test would show that the significant public interest has been entered under seal. I mean, ordinarily, we have a whole different practice that we have to go through to determine whether something should be unsealed. Would that be the end of the inquiry in this case? They were entered under seal? Or would a judge in a FOIA case have to review whether the judge in another district in another circuit appropriately entered a sealing order? I don't believe that the sealing of these records would necessarily end this question. They are still records. They are still federal government agency records. The fact that they were not sealed, I think, goes to the government's belated argument that the government believes that there are very strong privacy concerns in these records. I think even if they were sealed, we would still have the same FOIA analysis to apply to those records. Okay. So let's assume hypothetically that the District Court used the wrong standard. He should have used the FOIA standard. So I think that's where your argument started. Using the FOIA standard, what is your argument that nonetheless we should affirm the District Court? Yes, Your Honor. This case was the government and my client, we filed for cross-summary judgment. This is a de novo review of the record before the District Court. I believe that all of the necessary records were before the District Court and not before this Court and that even if this Court were to accept that the District Court judge applied the wrong framework, this Court can still affirm the decision by appropriately applying this balancing test set forth in FOIA. It's pretty clear, isn't it, that we are talking about really extreme privacy interests. You don't really contest that. No, that's correct, Your Honor. So is it your position that the redaction order adequately takes care of the privacy interests and that given that wrinkle in this case, privacy drops out of it and the sort of public interest in knowing how the DEA operates predominates? Yes, Your Honor. And I would also just reiterate that these FOIA exemptions at issue deal with unwarranted invasions of privacy or possibly unwarranted invasions of privacy. The exemptions don't suggest that there can be no intrusion or no invasion of privacy and I do believe that the District Court adequately balanced those interests with the redactions. So the government's response to you is actually given the happenstance of the trial and the transcript and the identification of people there, it isn't too hard to say 2 plus 2 equals 4 and to name the people. And that naming of the people together with the possible publication of their medical records or even autopsy photos still constitutes an extreme invasion of privacy. That's their argument. So what's your response? Yes, Your Honor. I would actually suggest that because of the voluminous records that were admitted, as my sister indicated, many of the exhibits were entered en masse with very little testimony about those records. I don't believe that it would simply be 2 plus 2 equals 4. I think it would be a much more difficult equation to piece together the transcript with these redacted medical records, especially in light of the District Court's order that the trial exhibit numbers also be redacted as an extra step to try to protect these innocent third parties with respect to their medical information. Essentially this case... Excuse me. Was it clear at the criminal trial that say you have victim number 20? How many victims were there here? I don't know how many victims there were. I know 27 patients testified. And their records were admitted as exhibits. So why does redacting the exhibit number if you can follow sequentially take care of this problem? Because, Your Honor, in addition to these 27 patient records, there were additional patient records and those patients did not testify. So it's not simply matching up one-to-one. There were 27 witnesses that testified and their records did come in as exhibits and additionally there were records that came in and the patient, some of whom were deceased, for example, obviously did not testify at the criminal trial. Right. Thank you. As I stated, this case is about applying the FOIA framework. It's applying the balancing test to the significant public interest, which I haven't fully touched on here. I would just point out that the DEA spent many resources touting this particular criminal case. It issued press releases. It indicated that this criminal conviction should serve as a warning to other physicians who may be prescribing controlled substances. So I believe under the Union Leader case, this shows that the DEA intrinsically acknowledged the public significance in the records in this case, Your Honor. And so the point of this book is the DEA didn't do such a great job? Your Honor, there is no point of the book. I would contend. There's always a point to a book. Yes, Your Honor. Let me rephrase. I would say that under FOIA case law, the particular motivations of the FOIA request are... No, but it's relevant to what you call the balancing test. So can you go back and answer my question? What the point of the book is? I don't know that that has actually been determined, Your Honor. At this point, the goal is to obtain these records that the DEA admitted into a public... And once you have them, there's nothing that stops you from using them, publishing them, putting them online, making them available to the world, correct? That is correct, Your Honor. I was going to say I have a little bit more time, but my time is up. Thank you. Your Honor, just two points on Roberto. First, I'd like to respond to the point that by introducing these exhibits at trial, that they were publicly available. Of course, if that were the case, we wouldn't be here because plaintiff would have them. These exhibits are not on Pacer. The information is not on a public website. They are practically obscure under the Supreme Court's doctrine. And secondly, to answer Judge Lynch's question about redactions, the DEA has made available medical records of patients who cannot be readily identified from the transcripts. It has made available medical records of patients who are deceased. So it is a small handful of D-22 exhibits, if my recollection is accurate, of records of patients who can be readily identified from the information that plaintiff already has from the trial transcript and from the information that's been released. I thought you told us that as to people who were deceased, you were holding back autopsy photos, scars of death, that sort of stuff. Yes, Your Honor. Thank you for the opportunity to clarify. Their medical records, so their medical histories have been released, but their autopsy reports and death-related records, records related to the conditions and circumstances of their death, finding of the deceased's life. That's a curious line to draw. Why did you draw it? Your Honor, we are maintaining that the privacy interest in the death-related records is that of the survivors. No, that you would release the medical records of people who had died, but not release the medical records of people who were still alive, who were victims of all of this. Yes, Your Honor. Our appeal in this case is asserting the privacy interests of living people in their medical records and in the survivors of dead people in the death-related records, and therefore we've released documents on some of them. And you have no interest in the medical records of the deceased? We have not pressed that argument on appeal. But for the reasons stated in our brief, we ask that this court reverse and remand for the entry of judgment in favor of the government in this case. Exhibits are typically kept in the court files until the case is over and all the appeals are over, etc. And then after that, oftentimes they're returned to the party proponents, but not always. So what's the status of these exhibits? Your Honor, I don't know that they have been returned. I can't say with certainty, but my impression is that the District Court in Ohio may still have some of the exhibits. Okay, thank you.